[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, whose maiden name was Denise Hurteau, and the defendant married on May 24, 1986, at Old Saybrook, Connecticut. One of the parties to this action has resided continuously in the State of Connecticut for at least 12 months next preceding January 30, 1993. Only the following minor children have been born to the plaintiff wife since the date of the marriage and they are lawful issue of the marriage, to wit; Carey Lynn Fitzgerald, born June 29, 1987; and Meghan Michelle Fitzgerald, born June 29, 1987. No other minor child had been born to the plaintiff since the date of the marriage. Neither of the parties is the recipient of a municipal or state assistance and this action invokes the jurisdiction of this court to dissolve the marriage and to enter orders appropriate in accordance with the statutory scheme and the request of the parties.
Based upon the credible, admissible and relevant evidence the court concludes that the marriage of these parties has indeed brokendown irretrievably. From the testimony of the parties and other evidence the court concludes that each of the parties has suffered from chemical substance abuse problems. Mainly from the said substance abuse problems and from other aspects of relationship with each other the court finds that their marriage has in fact brokendown irretrievably. Each of the CT Page 6674 parties had contributed substantially to the causes breakdown of this marriage.
The principal issue in the trial of this cause of action is the question of custody of the minor children of the parties. The plaintiff suffers from interstitial cysitus and was operated on in February 1993 for this physical disability. She has substantially recovered, although still continues to suffer some debilitating effects therefrom. She presents herself as quite a hostile, angry person and because of this and the resulting reaction from the defendant, has been unable to conduct any sustained meaningful communication with the defendant father in connection with various questions surrounding the upbringing of their children. The plaintiff continues to evidence substantial signs of emotional instability and the court concludes has still not come to grips with the reality of her problems with alcohol and continues to use alcohol regularly in the course of her life as she is living it at present.
In contra-distinction to this, the defendant presents himself as an individual who has brought under control his substance abuse problems and continues to receive therapeutic assistance in connection with his problem in living as they present themselves to him. He appears to be at this time a very stable individual.
Pursuant to the appropriate statutory criteria as provided under our law for consideration in apportioning amounts of alimony and property settlement, the court orders that the defendant pay to the plaintiff $5,000 by way of property settlement within 60 days. In addition, the defendant shall pay to the plaintiff the sum of $175 per week as alimony for a period of two years (through 6/30/96), which amounts shall be non-modifiable as to term and/or amount. The plaintiff has marketable work skills and in accordance with her testimony and her background and her present physical condition the court concludes that a period of two years is reasonable to allow her to update her work skills and resume a viable employment status in the community. In addition, during said two year period the plaintiff shall not be obligated to contribute toward the support of the minor children. Commencing June 30, 1996, the plaintiff mother shall contribute to the support of said minor children in accordance with the appropriate guide lines of support in existence at said time. CT Page 6675
The personal property of the parties is distributed to them in accordance with their stipulations and agreements of record.
The real estate located at 5 Toms Road, Old Saybrook, Connecticut is set over and assigned to the defendant to be his absolutely and he shall maintain the mortgage payments thereon and hold the wife harmless in connection with any future liability therefrom. The court concludes the value of said realty is $160,000 and it's prior award of property settlement to the plaintiff has taken into account the defendant's contribution toward the acquisition of said property.
The defendant shall pay the outstanding balance as it accrues on the Volvo automobile and the said Volvo automobile is assigned to the plaintiff to be hers absolutely and she shall be responsible for all upkeep, maintenance and insurance thereon.
As aforesaid until June 30, 1996 the defendant shall support and pay medical expenses for the minor children. Thereafter the plaintiff and the defendant shall share and be equally responsible for the medical expenses of the minor children, including the cost of medical insurance if such is appropriate.
The parties are jointly responsible for the following debts and each shall pay one-half and indemnify and hold harmless the other in connection with the Yale New Haven Hospital bill in the amount of $178.00; Yale Office Professional Services in the amount of $2,903.00; and miscellaneous medical bills in the amount of $1,303.00. Each party shall pay any other debts as shown on their respective financial affidavits and hold the other harmless therefrom.
The parties shall be jointly responsible for the payment of the Bank Hebel evaluation bill and reasonable fees of the attorney for the minor children. Each party shall retain and own in their own right ether assets that may be shown on their affidavits.
With respect to the Fitzgerald Painting Company, all of its assets are assigned to the defendant to be his absolutely and he shall hold the plaintiff harmless in connection with any liability on account of the operation of said business past, present or in the future.
Principal part of the trial was concerned with the claims of CT Page 6676 each party for sole custody of the minor children. The court heard extensive testimony not only from the parties but the Family Relations Officer and from Dr. Steven Bank. There exists a high degree of hostility still between the parties and they are unable to communicate on a regular occurring and reasonable basis. Given this severe communication between the parties, joint custody is not a reasonable, viable option at this time.
Custody of the minor children is awarded to the defendant father. The father shall advise the mother about major developmental issues in the children's lives concerning their education, medical and religious and recreational activities and it should be done within a reasonable time after he becomes aware of said issues. With respect to the religious upbringing of the children the court finds from the evidence that the parties had a contractual arrangement as a result of their marriage that the children would be raised in the Catholic faith and accordingly the father's determinations in connection with the religious upbringing and education of the children shall control. The mother shall not schedule any activities that interfere with the normal religious exercises of the children nor shall she cause the children to participate in any other religious practices other than Catholicism. In addition, the father shall make all decisions concerning the extra-circular activities of the children and it is recommended by the court that he consult with the mother. It they are unable to agree, however, the father's decision shall be final. The activities shall not be set up intentionally for the purpose of interfering with the mother's visitation schedule. Should reasonable recreational activities of the children pour over into the designated visitation period the mother she shall see that the children regularly attend those activities that the father determines are reasonably necessary for their well being, including soccer. During the mother's period of visitation, the father should not indulge in numerous telephone calls to her or to his children and one telephone call from the children should suffice to make the father aware of current circumstances while they are visiting their mother. Neither parent shall discuss divorce, custody or visitation issues with the children. Neither parent should discredit or be disrespectful with respect to the other parent or interfere in any way with the development of a good parental relationship with the children with both parents. The parents are ordered to involve themselves in co-parenting classes as sponsored under the parent education program to help them develop more skills in this area. CT Page 6677
The mother shall have visitation with the children on alternate weekends from Friday after school until Monday morning. The drop off point and pick up point shall be their school. The mother may have visitation with the children on Wednesday after school until 7:00 P.M. The father will pick the children up at the mother's home unless other arrangements are made between the parties. Mother's Day and Father's Day shall be with the respective parents from 10:00 A.M. to 7:00 P.M. Thanksgiving on even numbered years shall be with the mother from 10:00 A.M. to 7:00 P.M. If Thanksgiving falls on Thursday of the week that the Mother has the week end access the children will be with the Mother until the end of the regular week end visitation period on Sunday. On odd numbered years said visitation with the father. Christmas Eve in even numbered years shall be with the mother from 4:00 P.M. until 11:00 A.M. on Christmas Day at which time the father will have the children. The mother will have the children again from December 28th at 4:00 P.M. until December 31st at 7:00 P.M. In odd numbered years the mother will have the children from 11:00 A.M. Christmas Day until December 28th until 4:00 P.M. Easter in odd numbered years will be with the father and even numbered years with the mother from 10:00 A.M. until 7:00 P.M.
Vacations with the children at the option of the parents shall be for up to four weeks vacation period during each year. Only two weeks of such vacation may be consecutive weeks. The vacation shall not be while the children are attending school but may include winter and or spring break. Should the parents choice of weeks conflict the mother will have first choice in the odd numbered years and the father will have first choice in the even numbered years. Each shall provide to the other written notice of their choice of vacation visitation at least 60 days in advance except that for this summer period two weeks advance notice shall be given. The children shall have reasonable access to the non custodial parent during periods of visitation.
The children shall not be removed from the State of Connecticut for more than 48 hours unless the parent shall provide to the other parent the location, phone number and other pertinent travel arrangements at least one week prior to leaving the State of Connecticut. It is recommended by this court that each will offer to the other a first refusal with respect to child care. She shall be accorded usual Cobra rights at his cost for two years and then at her cost. CT Page 6678
A decree is hereby entered dissolving the marriage of the parties and orders are entered in accordance with the foregoing memorandum.
It is so ordered.
HIGGINS, J.